UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 12-26 (JRT/JSM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **SUPERSEDING INDICTMENT** |
| Plaintiff, | (18 U.S.C. § 2) |
| | (18 U.S.C. § 922(g)(1)) |
| v. | (18 U.S.C. § 922(n)) |
| | (18 U.S.C. § 924(a)(2)) |
| 1. WAKINYON WAKAN MCARTHUR, | (18 U.S.C. § 924(a)(1)(D)) |
|    a/k/a Kon, | (18 U.S.C. § 924(c)) |
|    a/k/a Killa, | (18 U.S.C. § 924(e)) |
| 2. SHAUN MICHAEL MARTINEZ, | (18 U.S.C. § 924(j)) |
|    a/k/a Tinez, | (18 U.S.C. § 924(o)) |
| 3. CHRISTOPHER LEE WUORI | (18 U.S.C. § 1512) |
|    a/k/a White, | (18 U.S.C. § 1513) |
|    a/k/a Lil White, | (18 U.S.C. § 1959(a)) |
| 4. ANTHONY FRANCIS CREE, | (18 U.S.C. § 1961(1)) |
|    a/k/a Pun, | (18 U.S.C. § 1962(d)) |
| 6. WILLIAM EARL MORRIS, | (21 U.S.C. § 841(a)(1)) |
|    a/k/a Odie, | (21 U.S.C. § 841(b)(1)(A)) |
| 12. IRAH LEE GOODWIN, and | (21 U.S.C. § 841(b)(1)(B)) |
| 25. JESUS THOMAS ALI, | (21 U.S.C. § 841(a)(1)(C)) |
|    a/k/a Zues, | (21 U.S.C. § 846) |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

### COUNT 1
**(Conspiracy to Participate in Racketeering Activity)**

The Grand Jury for the District of Minnesota charges that:

### Introduction

1.     The Native Mob is a gang composed primarily of Native American males, with members operating throughout the State of Minnesota, and elsewhere.

2.     The Native Mob originated in Minneapolis, Minnesota, where Native Mob members engaged in turf wars for the control of drug distribution locations in the mid-1990's.

SCANNED
JUL 19 2012
U.S. DISTRICT COURT MPLS

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

3.    The Native Mob is a regional criminal organization with approximately 200 members regularly conducting gang activities in Minnesota and elsewhere.  Gang members actively recruit new members, including juveniles, from communities with a large number of Native American males, from prison populations, and elsewhere.

4.    At all times relevant to this Superseding Indictment, the following defendants were members of the Native Mob:

**WAKINYON WAKAN MCARTHUR,**
**a/k/a Kon,**
**a/k/a Killa,**
**SHAWN MICHAEL MARTINEZ,**
**a/k/a Tinez,**
**CHRISTOPHER LEE WUORI,**
**a/k/a White,**
**a/k/a Lil White,**
**ANTHONY FRANCIS CREE,**
**a/k/a Pun,**
**WILLIAM EARL MORRIS,**
**a/k/a Odie,**
**IRAH LEE GOODWIN, and**
**JESUS THOMAS ALI,**
**a/k/a Zues,**

as were **EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, ALEX JOHN JONES, a/k/a Bunz, DALE WESLEY BALLINGER, JR., a/k/a DJ, DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ, STIRLING MICHAEL HEATON, a/k/a Pitbull, SAMUEL KYLE WHITE, ERIC LEE BOWER, CODEY JOSEPH STONE, JUSTEN LEE POITRA, a/k/a Justo, JASON FRANCIS POITRA, a/k/a J-Twin, CORY GENE OQUIST, a/k/a**

Guns, **MATTHEW STEVEN POITRA**, a/k/a Chewy, **SHELBY GENE BOSWELL**, a/k/a Sweets, **AARON JAMES GILBERT**, a/k/a Fatboy, **DALE JOHN PINDEGAYOSH**, a/k/a JP, **KIERON KEITH KIER**, and **LANCE MAURICE HANKS**, a/k/a LB.

5.   At all times relevant to this Superseding Indictment, in order to join the Native Mob, a current member was required to "vouch" for the prospective member, after which the prospective member was placed on probation and thereafter allowed to associate with other Native Mob members.

6.   At all times relevant to this Superseding Indictment, members of the Native Mob from time to time signified their membership by wearing tattoos, by dressing in red and black clothing, and by wearing Native Mob jewelry.   The tattoos often read "Native Mob" or "NM", or incorporated Native American symbols, such as a medicine wheel, a bear paw, a feather, or similar symbols.   Native Mob members referred to one another by their gang names and often used the term "Fam" - which is an abbreviation of the word "Family" - when referencing or addressing other members of the Native Mob.

7.   At all times relevant to this Superseding Indictment, members of the Native Mob were expected to protect the name, reputation, and status of the gang from rival gang members

and other persons.   Native Mob members required that all individuals should show respect and deference to the gang and its membership.  To protect the gang and enhance its reputation, Native Mob members were expected to use any means necessary to force respect from those who showed disrespect, including acts of intimidation and violence.

8.   At all times relevant to this Superseding Indictment, members of the Native Mob regularly engaged in criminal activity including, but not limited to drug trafficking, murders, attempted murders, assaults, robberies, and drive-by shootings. Native Mob members were expected to commit acts of violence and engage in criminal activity to maintain membership within the gang and to intimidate rival gangs.  Participation in criminal activity by a Native Mob member, particularly violent acts directed at rival gangs or as directed by the gang leadership, increased the respect accorded to that member, resulted in that member maintaining or increasing his position in the gang, and could have resulted in a promotion to a leadership position.

9.   At all times relevant to this Superseding Indictment, the Native Mob maintained a distinct hierarchy of elected leadership.  The Native Mob was led by a "Chief" and a "co-Chief".  These positions were also referred to as "Ogema" - the Ojibwe word for chief - and "co-Ogema".  The primary duties of the

4

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

Chief and co-Chief were delegating and encouraging the commission of criminal acts by gang members, maintaining discipline, managing personnel, and facilitating council meetings. Below the Chief and co-Chief were "War Chief", "Treasurer", "Chief Enforcer", and "Reps." The Treasurer was primarily responsible for the distribution of funds and other benefits to members of the Native Mob. The War Chief was responsible for responding to external threats to the gang, while the Chief Enforcer's primary duties centered on meting out punishment to gang members for infractions of the gang's rules and by-laws. In addition to the hierarchy of leadership, the Native Mob was organized by geographical regions within the State of Minnesota including, but not limited to, South Minneapolis, Mille Lacs Indian Reservation, White Earth Indian Reservation, Red Lake Indian Reservation, Duluth, and Cass Lake. The Native Mob elected a representative (the aforementioned "Rep") for each of these geographic regions. The "Rep" was primarily responsible for the discipline and the criminal activities of members within his own geographic region, as well as recruiting new members from his region.

10. At all times relevant to this Superseding Indictment, Native Mob members met on a regular basis to, among other things, resolve problems or issues involving members, to discuss gang rules and gang business, to report on acts of violence

committed by their members with the goal of encouraging further violence, and to unite gang members.   These meetings, called "council," typically occurred on the second Saturday of each month at a location designated by Native Mob leadership.   At council, roll-call was taken and members stated which geographic region they represented.

11.   At all times relevant to this Superseding Indictment, Native Mob gang members were expected to financially support other Native Mob members incarcerated in prison.  This most often took the form of placing money on the prison accounts of those incarcerated members. Incarcerated gang members then used this money to purchase cigarettes, televisions, contraband, and other items within the correctional facilities.

12.   At all times relevant to this Superseding Indictment, Native Mob gang members regularly communicated with fellow gang members who were incarcerated.  These communications most often took the form of prison phone calls and written correspondence.   The communications often centered around gang rules and violations, crimes recently committed by Native Mob gang members, the location of Native Mob members within the prison system, the location of rival gang members within the prison system, recruitment efforts, Native Mob leadership and membership

changes, disputes within the gang, and the distribution of money to enterprise members.   These communications furthered the Native Mob's strength, both in terms of numbers of members, and in its ability to intimidate enemies.   Native Mob members also used money wire transfers to conduct and promote gang activities.

13.   At all times relevant to the Superseding Indictment, Native Mob gang members charged with crimes often shared with each other their discovery, that is, the police reports, witness statements, and evidence collected against enterprise members charged with crimes.   This sharing of discovery furthered the Native Mob's ability to intimidate witnesses, victims, and enemies of the Native Mob, and it enhanced the Native Mob's ability to learn the identities of those cooperating with authorities.

## The Racketeering Enterprise

14.   The Native Mob, including its leadership, membership and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4)(hereinafter "the enterprise"), that is, a group of individuals associated in fact.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.   This enterprise was engaged in, and the activities affected, interstate and foreign commerce.

United States v. Wakinyon Wakan Mcarthur, et al.    Criminal No. 12-26(JRT/JSM)

## Purposes of the Enterprise

15.   The purposes of the Native Mob enterprise included the following:

a.   Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation and violence, including murders, attempted murders, assaults, robberies, and threats of violence;

b.   Promoting and enhancing the enterprise and its members' and associates' activities, including, but not limited to, murder, attempted murder, assaults, narcotics trafficking, robberies, and other criminal activities;

c.   Keeping victims and potential victims in fear of the enterprise and in fear of its members and associates, through violence and threats of violence;

d.   Providing financial support and information to gang members, including those who were incarcerated for committing acts of violence or other offenses;

e.   Providing assistance to other gang members who committed crimes for and on behalf of the enterprise; and

f.   Providing assistance to other gang members, in order to hinder, obstruct and prevent law enforcement officers from identifying the offender, apprehending the offender, and trying and punishing the offender.

8

United States v. Wakinyon Wakan Mcarthur, et al.   Criminal No. 12-26(JRT/JSM)

## Manner and Means of the Conspiracy

16.   It was further part of the manner and the means of the conspiracy that the defendants, as members of the Native Mob, would regularly meet as required with other Native Mob gang members to discuss, among other things, past acts of violence and other crimes committed by gang members against rival gang members and others; to notify one another about gang members who were arrested or incarcerated; to discuss the disciplining of Native Mob gang members; to discuss police interactions with gang members; to share with one another the identities of individuals who might be cooperating with law enforcement and propose actions to be taken against those individuals; to plan and agree upon the commission of future crimes, including drug-trafficking, murders, robberies, and assaults; and to reinforce gang rules and by-laws.

17.   It was further part of the conspiracy that the defendants and other members and associates of Native Mob agreed to purchase, maintain and circulate a collection of firearms for use in criminal activity by Native Mob members.

18.   It was further part of the manner and the means of the conspiracy that the defendants and other members and associates of Native Mob agreed that acts of violence, including murder and attempted murder, would be committed by members and associates of the Native Mob against rival gang members and to impose discipline

United States v. Wakinyon Wakan Mcarthur, et al.   Criminal No. 12-26(JRT/JSM)

within the Native Mob itself, and on other occasions as deemed necessary.

      19.   It was further part of the manner and means of the conspiracy that the defendants and other members and associates of the Native Mob agreed that members and associates of the Native Mob would commit robberies, acts of drug distribution and other crimes. It was further part of the manner and means of the conspiracy that the defendants and other members and associates of the Native Mob would conceal their criminal activities and obstruct justice, including by threatening witnesses.

## The Racketeering Conspiracy

      20.   Beginning on a date unknown to the Grand Jury, but at least as of the mid-1990's, and continuing to the present date, in the District of Minnesota and elsewhere, the defendants,

WAKINYON WAKAN MCARTHUR,
a/k/a Kon,
a/k/a Killa,
SHAWN MICHAEL MARTINEZ,
a/k/a Tinez,
CHRISTOPHER LEE WUORI,
a/k/a White,
a/k/a Lil White,
ANTHONY FRANCIS CREE,
a/k/a Pun,
WILLIAM EARL MORRIS,
a/k/a Odie,
IRAH LEE GOODWIN, and
JESUS THOMAS ALI,
a/k/a Zues,

10

together with others both known and unknown to the Grand Jury, each being a person employed by and associated with the Native Mob, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under the following provisions of Minnesota law:

      a.    Murder, attempted murder and conspiracy to commit murder, in violation of Minnesota Statutes, §§ 609.185, 609.17, 609.175;

      b.    Aggravated robbery, and conspiracy to commit aggravated robbery, in violation of Minnesota Statutes, §§ 609.245 and 609.175;

      c.    Coercion in violation of Minnesota Statutes, § 609.27;

multiple acts involving the following provisions of federal narcotics laws:

      d.    21 U.S.C. § 846 (Conspiracy to Distribute and Possess With Intent to Distribute a Controlled Substance)

   e. 21 U.S.C. § 841(a)(1)(Distribution and Possession With Intent to Distribute Cocaine, Cocaine Base, Methamphetamine, Marijuana, Oxycodone and 3,4-Methylenedioxymethamphetamine, also known as MDMA or "Ecstasy";

and multiple acts indictable under the following provisions of federal law:

   f. 18 U.S.C. §§ 1512 (witness tampering) and 1513 (witness retaliation).

   21. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

   22. In furtherance of the conspiracy and to achieve the objectives thereof, at least one of the conspirators performed or caused to be performed at least one of the following overt acts, among others, in the District of Minnesota and elsewhere:

   a. On or about October 1, 2003, in Bloomington, Minnesota, Native Mob members attended a meeting to discuss gang business and activities in furtherance of the enterprise.

b.   On or about November 29, 2003, in South Minneapolis, Minnesota, **AARON JAMES GILBERT, a/k/a Fatboy**, and others both known and unknown to the Grand Jury shot at a rival gang member.

c.   On or about November 23, 2004, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, wrote a letter from prison to a fellow Native Mob member describing his plan for the Native Mob upon his release from prison, which included the "need to hold people accountable, foes or our own. Discipline and promote fear is the quickest way to progress in our case." **MCARTHUR** further wrote, "[u]p north or Southside. Shit's gonna get real once again. I believe in that 100%."

d.   On or about February 11, 2005, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, made a telephone call to another Native Mob member in which he discussed his plans for the Native Mob upon his release from prison.

e.   On or about April 11, 2006, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, wrote a letter from prison to a member of the Native Mob, explaining that he was recruiting new members, and was holding gang meetings in prison to plan for the Native Mob's resurgence upon his release.

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

      f.   On or about October 8, 2006, in South Minneapolis, Minnesota, **CODEY JOSEPH STONE** assaulted a female with a firearm, robbed a male victim with the firearm, possessed approximately 6 grams of "crack" cocaine, and threatened to kill rival gang members.

      g.   On or about September 15, 2007, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, participated in a telephone conversation in which he discussed the status of rival gangs within Minnesota prisons.

      h.   On or about November 30, 2007, in Cass Lake, Minnesota, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, ordered known fellow Native Mob members to shoot at an occupied house where a rival gang member was located and provided a handgun with which to commit the shooting.  Those known gang members did, in turn, drive to the home and fire a 9mm handgun multiple times at the occupied residence.

      i.   On or about February 16, 2008, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, participated in a telephone conversation in which he discussed Native Mob gang business with a fellow member of the gang.

14

United States v. Wakinyon Wakan Mcarthur, et al.   Criminal No. 12-26(JRT/JSM)

   j. On or about March 17, 2008, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, authorized a fellow Native Mob member to assault a prison inmate.

   k. On or about August 25, 2009, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez**, and **DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ**, possessed marijuana with the intent to distribute.

   l. On or about October 27, 2009, in South Minneapolis, Minnesota, **SHELBY GENE BOSWELL, a/k/a Sweets, CORY GENE OQUIST, a/k/a Guns**, and a third member of the Native Mob, while yelling "Native Mob," shot at members of a rival gang, hitting a rival member in the leg.

   m. On or about December 12, 2009, **WAKINYAN WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White, DALE JOHN PINDEGAYOSH, a/k/a JP, STIRLING MICHAEL HEATON, a/k/a Pitbull, SHELBY GENE BOSWELL, a/k/a Sweets, JUSTEN LEE POITRA, a/k/a Justo, MATTHEW STEVEN POITRA, a/k/a Chewy, ANTHONY FRANCIS CREE, a/k/a Pun, CODEY JOSEPH STONE** and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise.

   n. On or about February 13, 2010, **JUSTEN LEE POITRA, a/k/a Justo, JASON FRANCIS POITRA, a/k/a J-Twin,**

United States v. Wakinyon Wakan Mcarthur, et al.    Criminal No. 12-26(JRT/JSM)

CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White, ANTHONY FRANCIS CREE, a/k/a Pun, DALE WESLEY BALLINGER, JR., a/k/a DJ, ERIC LEE BOWER, IRAH LEE GOODWIN, MATTHEW STEVEN POITRA, a/k/a Chewy, and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise.

o.   On or about March 1, 2010, in Minneapolis, Minnesota, CODEY JOSEPH STONE threatened a witness who was cooperating in the investigation and prosecution of a fellow Native Mob member.

p.   On or about March 4, 2010, in Cass Lake, Minnesota, WILLIAM EARL MORRIS, a/k/a Odie, and ANTHONY FRANCIS CREE, a/k/a Pun, at the direction of WAKINYAN WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White and other members of the Native Mob both known and unknown, in retaliation for Victim-1's cooperation with law enforcement, attempted to kill Victim-1 by shooting him three times with a .40 handgun while Victim-1 held his 5 year-old daughter, Victim-2.

q.   On or about March 7, 2010, in South Minneapolis, Minnesota, EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed, attempted to kill Victim-3, a Native Vice Lord gang member, by shooting him in the neck.

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

r.   On or about March 18, 2010, in Mille Lacs, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez**, possessed and discharged a .22 caliber firearm.

s.   On or about March 31, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, sold a quantity of Ecstasy to a person known to the grand jury.

t.   On or about April 5, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, sold a quantity of Ecstasy to a person known to the grand jury.

u.   On or about April 9, 2010, in Cass Lake, Minnesota, **SHELBY GENE BOSWELL, a/k/a Sweets**, sold 1.5 grams of cocaine base ("crack") to a person known to the grand jury.

v.   On or about April 13, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, sold a quantity of cocaine and a quantity of Ecstasy to a person known to the grand jury.

w.   On or about April 27, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, sold a quantity of marijuana to a person known to the grand jury.

x.   On or about April 29, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, sold a quantity of marijuana to a person known to the grand jury.

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

y.   On or about May 11, 2010, near Duluth, Minnesota, **SAMUEL KYLE WHITE** pistol-whipped Victim-4, a rival gang member, while yelling "Native Mob".

z.   On or about May 22, 2010, in South Minneapolis, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, LANCE MAURICE HANKS, a/k/a LB,** and **DERRICK DEWAYNE WILLIAMS, a/k/a DJ,** yelled "Native Mob" then shot at members of a rival gang.

aa.   On or about June 5, 2010, in Mille Lacs, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez,** yelled "Native Mob", then shot at the occupied home of Victim-5, a rival gang member.

bb.   On or about June 13, 2010, in South Minneapolis, Minnesota, **CODEY JOSEPH STONE, ALEX JOHN JONES, a/k/a Bunz, DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ, KIERON KEITH KIER, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, STIRLING MICHAEL HEATON, a/k/a Pitbull, MATTHEW STEVEN POITRA, a/k/a Chewy, LANCE MAURICE HANKS, a/k/a LB, CORY GENE OQUIST, a/k/a Guns, DALE WESLEY BALLINGER, JR., a/k/a DJ,** and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise.

cc.   On or about June 13, 2010, in South Minneapolis, Minnesota, following a Native Mob council meeting,

18

**EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed,** provided a handgun to another Native Mob member who then shot at a rival gang member, Victim-6, while both yelled "Native Mob".

     dd. On or about June 20, 2010, in Pine County, Minnesota, **DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ**, assaulted Victim-7 with a .40 handgun and a bottle.

     ee. On or about June 23, 2010, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz, SHELBY GENE BOSWELL, a/k/a Sweets**, and a juvenile member of the Native Mob were present in a vehicle in which a sawed-off .22 rifle with an obliterated serial number was found.

     ff. On or about June 30, 2010, in South Minneapolis, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, DALE WESLEY BALLINGER, JR., a/k/a DJ**, and a third Native Mob member shot at rival gang members in a public park.

     gg. On or about July 7, 2010, on the White Earth Indian Reservation in Mahnomen County, **ERIC LEE BOWER** assaulted Victim-8 in retaliation for her cooperation with law enforcement.

     hh. On or about July 10, 2010, near Duluth, Minnesota, **SHELBY GENE BOSWELL, a/k/a Sweets,** and other Native Mob members assaulted Victim-9, a rival gang member, and two other

victims, Victim-10 and Victim-11, with a baseball bat while yelling "Native Mob."

ii. On or about July 10, 2010, near Duluth, Minnesota, **WAKINYAN WAKAN MCARTHUR**, a/k/a Kon, a/k/a Killa, **CHRISTOPHER LEE WUORI**, a/k/a White, a/k/a Lil White, **STIRLING MICHAEL HEATON**, a/k/a Pitbull, **SHELBY GENE BOSWELL**, a/k/a Sweets, **MATTHEW STEVEN POITRA**, a/k/a Chewy, **DERRICK DEWAYNE WILLIAMS, JR.**, a/k/a DJ, **DAMIAN LEE BEAULIEU**, a/k/a Dames, a/k/a Damez, **CODEY JOSEPH STONE**, **KIERON KEITH KIER**, **AARON JAMES GILBERT, JR.**, a/k/a Fatboy, **DALE WESLEY BALLINGER, JR.**, a/k/a DJ, **LANCE MAURICE HANKS**, a/k/a LB, **CORY GENE OQUIST**, a/k/a Guns, **ALEX JOHN JONES**, a/k/a **Bunz**, and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise, including killing of those considered to be enemies of the Native Mob, the transportation of firearms from northern Minnesota to South Minneapolis for use in committing assaults and murders against enemies of the Native Mob, the storage and location of gang firearms, drug trafficking, collecting money for incarcerated Native Mob members and for the purchase of firearms, and the identity and location of persons believed to be cooperating against the Native Mob.

jj.  On or about July 20, 2010, in Crow Wing County, **WILLIAM EARL MORRIS, a/k/a Odie,** threw a cup of boiling water in Victim-12's face in retaliation for Victim-12's cooperation with law enforcement.

kk.  On or about July 22, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull,** possessed a firearm and 7.9 grams of methamphetamine that was packaged for distribution.

ll.  On or about July 27, 2010, in South Minneapolis, Minnesota, **KIERON KEITH KIER** possessed over 100 pills containing oxycodone.

mm.  On or about August 18, 2010, in Mille Lacs, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez,** possessed .380 ammunition.

nn.  On or about August 19, 2010, in Mille Lacs, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez,** fired a .380 handgun at the occupied home of a rival gang member.

oo.  On or about August 25, 2010, **CODEY JOSEPH STONE,** another Native Mob member, and two other persons were present in a vehicle in which a 9mm semi-automatic handgun was found.

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

pp.  On or about August 25, 2010, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, brandished a firearm at members of a rival gang.

qq.  On or about September 6, 2010, in South Minneapolis, Minnesota, **LANCE MAURICE HANKS, a/k/a LB**, claimed membership in the Native Mob and threatened to kill Minneapolis police officers who arrested him.

rr.  On or about September 9, 2010, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz, and DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez** shot at the occupied home of Victim-13, a rival gang member.

ss.  On or about September 12, 2010, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz, CODEY JOSEPH STONE**, and another Native Mob gang member known to the grand jury, robbed Victim-14, Victim-15, and Victim-16 at gunpoint, taking U.S. currency from their persons.

tt.  On or about September 23, 2010, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz, SHAUN MICHAEL MARTINEZ, a/k/a Tinez**, and other persons known to the grand jury robbed Victm-17 at gunpoint, taking oxycodone from Victim-17's person.

uu.  On or about September 25, 2010, in South Minneapolis, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez,** and another Native Mob member shot at the occupied home of a rival gang member with a .40 semi-automatic handgun.

vv.  On or about October 9, 2010, in South Minneapolis, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ, DALE WESLEY BALLINGER, JR., a/k/a DJ, AARON JAMES GILBERT, a/k/a Fatboy**, and other Native Mob gang members assaulted a known Native Mob gang member in retaliation for cooperating with law enforcement.

ww.  On or about October 9, 2010, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, SHAWN MICHAEL MARTINEZ, a/k/a Tinez, CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White, DALE WESLEY BALLINGER, JR., a/k/a DJ, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, ALEX JOHN JONES, a/k/a Bunz**, and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise.

xx.  On or about November 7, 2010, in Duluth, Minnesota, **STIRLING MICHAEL HEATON, a/k/a Pitbull**, assaulted Victim-4 in retaliation for cooperation with law enforcement and to prevent Victim-4 from testifying against Native Mob members.

yy. On or about November 15, 2010, in South Minneapolis, Minnesota, **SHAUN MICHAEL MARTINEZ, a/k/a Tinez, ALEX JOHN JONES, a/k/a Bunz, EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed,** and **MATTHEW STEVEN POITRA, a/k/a Chewy,** assaulted a fellow Native Mob gang member in retaliation for his cooperation with law enforcement.

zz. On or about November 20, 2010, in South Minneapolis, Minnesota, **ALEX JOHN JONES, a/k/a Bunz,** shot at Victim-18, a rival gang member.

aaa. On or about November 27, 2010, at the Indian Center in South Minneapolis, Minnesota, **DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez,** shot at a group of rival gang members at the direction of **EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed.**

bbb. On or about December 12, 2010, in St. Paul, Minnesota, **WAKINYAN WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White, SHAWN MICHAEL MARTINEZ, a/k/a Tinez, EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed, ERIC LEE BOWER, JUSTEN LEE POITRA, a/k/a Justo, JASON FRANCIS POITRA, a/k/a J-Twin, MATTHEW STEVEN POITRA, a/k/a Chewy, ALEX JOHN JONES, a/k/a Bunz, CORY GENE OQUIST, a/k/a Guns, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, DALE WESLEY BALLINGER, JR., a/k/a DJ, CODEY JOSEPH STONE, LANCE MAURICE HANKS, a/k/a LB,**

United States v. Wakinyon Wakan Mcarthur, et al.   Criminal No. 12-26(JRT/JSM)

DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ, and others both known and
unknown to the Grand Jury attended a meeting to discuss gang
business and activities in furtherance of the enterprise, including
drug-trafficking, encouraging members to assault or kill enemies of
the Native Mob, sharing gang firearms, collecting money to hire a
lawyer for an incarcerated member, and recruiting new members.

ccc. On or about December 17, 2010, in Isle,
Minnesota, DALE WESLEY BALLINGER, JR., a/k/a DJ, possessed a stolen
.38 revolver and ammunition.

ddd. On or about January 15, 2011, WAKINYON WAKAN
MCARTHUR, a/k/a Kon, a/k/a Killa, CHRISTOPHER LEE WUORI, a/k/a
White, a/k/a Lil White, SHAWN MICHAEL MARTINEZ, a/k/a Tinez,
EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed, JUSTEN FRANCIS POITRA,
ALEX JOHN JONES, a/k/a Bunz, CODEY JOSEPH STONE, CORY GENE OQUIST,
a/k/a Guns, MATTHEW STEVEN POITRA, a/k/a Chewy, and others both
known and unknown to the Grand Jury attended a meeting to discuss
gang business and activities in furtherance of the enterprise
including the shooting of a rival gang member, assaulting former
Native Mob members, and collecting money for incarcerated members.

eee. On or about January 30, 2011, in Mille Lacs,
Minnesota, DALE WESLEY BALLINGER, JR., a/k/a DJ, discharged a .30-
30 rifle at the occupied home of Victim-19, a rival gang member.

fff. On or about February 13, 2011, in St. Paul, Minnesota, **WAKINYON WAKAN MCARTHUR**, a/k/a Kon, a/k/a Killa, **CHRISTOPHER LEE WUORI**, a/k/a White, a/k/a Lil White, **SHAWN MICHAEL MARTINEZ**, a/k/a Tinez, **EDUARDO LOPEZ-VILLARRUBIA**, a/k/a Furry Ed, **ALEX JOHN JONES**, a/k/a Bunz, **CORY GENE OQUIST**, a/k/a Guns, **MATTHEW STEVEN POITRA**, a/k/a Chewy, **LANCE MAURICE HANKS**, a/k/a LB, and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise, including the sharing of gang firearms and rebuilding the Duluth chapter of the Native Mob.

ggg. On or about March 26, 2011, **WAKINYON WAKAN MCARTHUR**, a/k/a Kon, a/k/a Killa, participated in a telephone conversation with a Native Mob member. **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa** discussed a recently executed federal search warrant, providing a television to a newly incarcerated member of the gang, and a new Native Mob logo.

hhh. On or about March 28, 2011, **IRAH LEE GOODWIN** and another person known to the grand jury threatened Victim-20 and Victim-21 in retaliation for their cooperation with law enforcement.

iii. On or about April 1, 2011, **AARON JAMES GILBERT**, a/k/a Fatboy, and **DALE JOHN PINDEGAYOSH**, a/k/a JP, possessed with

the intent to distribute twenty-eight (28) packets of heroin having a total weight of 1.3 grams.

jjj.  On or about April 28, 2011, in Richfield, Minnesota, **EDUARDO LOPEZ-VILLARRUBIA, a/k/a Furry Ed**, attempted to rob a female.  When the victim's son intervened, **MATTHEW STEVEN POITRA, a/k/a Chewy**, claimed they were "Southside" and warned, "you'd better watch out, we have straps", referring to firearms.

kkk.  On or about May 16, 2011, in Cass Lake, Minnesota, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, and **CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White**, distributed 3.5 grams of cocaine base.

lll.  On or about June 11, 2011, near Cass Lake, Minnesota, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White, SHAWN MICHAEL MARTINEZ, a/k/a Tinez, JUSTEN LEE POITRA, a/k/a Justo, JASON FRANCIS POITRA, a/k/a J-Twin, MATTHEW STEVEN POITRA, a/k/a Chewy, ALEX JOHN JONES, a/k/a Bunz, DALE JOHN PINDEGAYOSH, a/k/a JP, DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ, CORY GENE OQUIST, a/k/a Guns, DAMIEN LEE BEAULIEU, a/k/a Dames, a/k/a Damez, LANCE MAURICE HANKS, a/k/a LB**, and others both known and unknown to the Grand Jury attended a meeting to discuss gang business and activities in furtherance of the enterprise, including the status of sources for

controlled substances, the recent arrests of NM members, a recent shooting committed by **ALEX JOHN JONES, a/k/a Bunz**, and the election of **ALEX JOHN JONES, a/k/a Bunz,** to a position of leadership.

mmm. On or about June 14, 2011, in Cass Lake, Minnesota, **CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White**, distributed approximately 6.9 grams of cocaine base.

nnn. On or about June 25, 2011, near Duluth, Minnesota, **IRAH LEE GOODWIN**, assaulted Victim-22 and Victim-23 with a firearm, and during his arrest yelled "don't say shit about the Native Mob!"

ooo. On or about July 2, 2011, near St. Paul, Minnesota, **SHAUN MICHAEL MARTINEZ, a/k/a Tinez**, told a family member of a cooperating witness that "if [the witness] has turned on us, he will not get away with it."

ppp. On or about November 22, 2011, in Cass County, Minnesota, **CORY GENE OQUIST, a/k/a Guns**, possessed with intent to distribute six individually wrapped rocks of crack cocaine.

qqq. On or about December 15, 2011, in Mille Lacs, Minnesota, **DERRICK DEWAYNE WILLIAMS, JR., a/k/a DJ**, and another Native Mob member possessed two stolen firearms, ammunition, and marijuana.

rrr.  On  or  about  April  19,  2005,  in  South
Minneapolis, Minnesota, **JESUS THOMAS ALI, a/k/a Zues**, possessed
with intent to distribute a quantity of crack cocaine.

sss. On or about August 24, 2010, in Cass Lake,
Minnesota, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa,** and
**CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White,** ordered
several known members of the Native Mob to conduct a "mission."
The known gang members were instructed to shoot at the occupied
home of a rival drug dealer in an effort to intimidate him and to
discourage him from selling drugs on Native Mob turf.  Members of
the Native Mob then drove to the target's home in Bemidji,
Minnesota, where Native Mob members fired handguns multiple times
at the occupied residence of the rival drug dealer.

ttt. On or about February 26, 2011, in Minneapolis,
Minnesota, **SHAUN MICHAEL MARTINEZ, a/k/a Tinez**, shot and killed
fellow Native Mob member Jeremee Kraskey because **MARTINEZ** and other
members of the Native Mob leadership believed that Jeremee Kraskey
was cooperating with federal and state law enforcement in the
investigation of the Native Mob.

uuu. On or about February 26, 2011, in Minneapolis,
Minnesota, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa, SHAUN
MICHAEL MARTINEZ, a/k/a Tinez, CHRISTOPHER LEE WUORI, a/k/a White,**

a/k/a **Lil White,** and others both known and unknown to the Grand Jury attended an "emergency" council meeting to discuss gang business, including the death of fellow Native Mob member Jeremee Kraskey.

vvv.  On or about March 3, 2011, in Minneapolis, Minnesota, **SHAUN MICHAEL MARTINEZ, a/k/a Tinez**, sold approximately 30 grams of cocaine to a person known to the Grand Jury.

www.  On or about March 28, 2011, **WAKINYON WAKAN MCARTHUR, a/k/a Kon, a/k/a Killa**, and **CHRISTOPHER LEE WUORI, a/k/a White, a/k/a Lil White**, ordered members of the Native Mob known to the Grand Jury to conduct a home-invasion robbery of a rival drug dealer's home in Leech Lake, Minnesota.  On this date, four men with their faces covered entered the home, brandished pistols, bound the victims, and searched for drugs and money.

xxx.  On or about August 11, 2011, **JESUS THOMAS ALI, a/k/a Zues**, instructed other members of the Native Mob to assault an individual who was believed to have stolen money from a member of the Native Mob.

yyy.  On or about January 19, 2012, **JESUS THOMAS ALI, a/k/a Zues**, and other known members of the Native Mob told Victim-25 that he needed to pay the Native Mob $1500 or Victim-25 would be beaten on a daily basis.

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

zzz.  On or about April 11, 2012, **JESUS THOMAS ALI,**

**a/k/a Zues**, possessed with the intent to distribute approximately

6 grams of a mixture containing methamphetamine.

### <u>Notice of Special Findings Regarding Count 1</u>

From in or about 2007 and continuing up through and including

the present, in the State and District of Minnesota and elsewhere,

the defendants,

> **WAKINYON WAKAN MCARTHUR,**
> **a/k/a Kon,**
> **a/k/a Killa,**
> **SHAWN MICHAEL MARTINEZ,**
> **a/k/a Tinez,**
> **CHRISTOPHER LEE WUORI,**
> **a/k/a White,**
> **a/k/a Lil White, and**
> **ANTHONY FRANCIS CREE,**
> **a/k/a Pun,**

knowingly and intentionally conspired with each other, and with

other persons, whose names are known and unknown to the grand jury,

to distribute and possess with intent to distribute 5 kilograms or

more of a mixture and substance containing a detectable amount of

cocaine, a controlled substance, and 280 grams or more of a mixture

and substance containing a detectable amount of cocaine base

("crack"), a controlled substance, and 50 grams or more of a

mixture or substance containing a detectable amount of

methamphetamine, a controlled substance, and 10 grams or more of a

mixture or substance containing a detectable amount of heroin, a

controlled substance, and oxycodone, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C) and 846.

Further, as alleged in overt act ttt, on or about February 26, 2011, in the State and District of Minnesota, the defendant,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a Tinez,**

did, with premeditation and intent to kill, cause the death of Jeremee Kraskey, all in violation of Minnesota Statute Sections 609.185, 609.17 and 609.175.

All in violation of Title 18, United States Code, Section 1962(d).

### COUNT 2
**(Conspiracy to Use and Carry Firearms During and**
**in Relation to a Crime of Violence)**

23.   From a date unknown, but from at least the mid-1990's through the date of this Superseding Indictment, in the State and District of Minnesota, the defendants,

**WAKINYON WAKAN MCARTHUR,**
**a/k/a Kon,**
**a/k/a Killa,**
**SHAWN MICHAEL MARTINEZ,**
**a/k/a Tinez,**
**CHRISTOPHER LEE WUORI,**
**a/k/a White,**
**a/k/a Lil White,**
**ANTHONY FRANCIS CREE,**
**a/k/a Pun,**
**WILLIAM EARL MORRIS,**
**a/k/a Odie, and**

32

### JESUS THOMAS ALI,
a/k/a Zues,

knowingly and intentionally conspired with each other and other
persons, whose names are known and unknown to the grand jury, to
carry and use a firearm during and in relation to a crime of
violence which may be prosecuted in a court of the United States;
namely, conspiracy to violate Title 18 U.S.C. Section 1962(d) as
alleged in Count 1, all in violation of Title 18, United States
Code, Section 924(o).

### COUNT 3
### (Attempted Murder in Aid of Racketeering)

24. Paragraphs 1 through 19 of this Superseding
Indictment are realleged and incorporated by reference as though
fully set forth herein.

25. At all times relevant to this Superseding
Indictment, the Native Mob constituted an enterprise as defined in
Title 18, United States Code, Section 1959(b)(2), that is, a group
of individuals associated in fact that was engaged in, and the
activities of which affected, interstate and foreign commerce. The
enterprise constituted an ongoing organization whose members
functioned as a continuing unit for a common purpose of achieving
the objectives of the enterprise.

26. At all times relevant to this Superseding Indictment, the Native Mob, the above-described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely: murder, in violation of Minnesota Statutes, Section 609.185; attempted murder and conspiracy to commit murder, in violation of Minnesota Statutes, Sections 609.185, Subd. 1, 609.17, and 609.175, Subd. 2; robbery and conspiracy to commit robbery, in violation of Minnesota Statutes, Sections 609.245 and 609.175, Subd. 2; conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846; distribution and possession with intent to distribute cocaine, cocaine base, methamphetamine, heroin, marijuana, and oxycodone, in violation of Title 21, United States Code, Section 841(a)(1); witness tampering and witness retaliation, in violation of Title 18, United States Code, Sections 1512 and 1513; and obstruction of justice, in violation of Title 18, United States Code, Section 1503.

27. On or about March 4, 2010, in the District of Minnesota, the defendants,

ANTHONY FRANCIS CREE,
a/k/a Pun,
WILLIAM EARL MORRIS,
a/k/a Odie,

34

> **WAKINYON WAKAN MCARTHUR,**
> **a/k/a Killa,**
> **a/k/a Kon, and**
> **CHRISTOPHER LEE WUORI,**
> **a/k/a White,**
> **a/k/a Lil White,**

for the purpose of maintaining and increasing their position in the Native Mob gang, an enterprise engaged in racketeering activity, committed, aided and abetted the commission of the attempted murder of Victim-1 and Victim-2, in violation of Minnesota Statute §§ 609.185(a)(1) and 609.17.

18 U.S.C. § 1959(a)(5)
18 U.S.C. § 2

### COUNT 4
### (Assault With A Dangerous Weapon in Aid of Racketeering)

28.   Paragraphs 1 through 19, 25 and 26 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

29.   On or about March 4, 2010, in the District of Minnesota and elsewhere, the defendants,

> **ANTHONY FRANCIS CREE,**
> **a/k/a Pun,**
> **WILLIAM EARL MORRIS,**
> **a/k/a Odie,**
> **WAKINYON WAKAN MCARTHUR,**
> **a/k/a Killa,**
> **a/k/a Kon, and**

**CHRISTOPHER LEE WUORI,**
**a/k/a White,**
**a/k/a Lil White,**

for the purpose of maintaining and increasing their positions in

the Native Mob gang, an enterprise engaged in racketeering

activity, unlawfully and knowingly committed, and aided and abetted

the commission of an assault with a dangerous weapon against

Victim-1 and Victim-2 in violation of Minnesota Statute §§ 609.222,

Subd. 1, and 609.17.

18 U.S.C. § 1959(a)(3)
18 U.S.C. § 2

## COUNT 5
### (Use and Carrying of Firearm During and in
### Relation to a Crime of Violence)

30.   On or about March 4, 2010, in the District of

Minnesota and elsewhere, defendants,

**ANTHONY FRANCIS CREE,**
**a/k/a Pun,**
**WILLIAM EARL MORRIS,**
**a/k/a Odie,**
**WAKINYON WAKAN MCARTHUR,**
**a/k/a Killa,**
**a/k/a Kon, and**
**CHRISTOPHER LEE WUORI,**
**a/k/a White,**
**a/k/a Lil White,**

together with others known and unknown to the Grand Jury, did

knowingly use and carry a firearm during and in relation to, and

possess a firearm in furtherance of, a crime of violence for which

he may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise as alleged in Count 1 of this Superseding Indictment, attempted murder in aid of racketeering as alleged in Count 3 of this Superseding Indictment, and assault with a dangerous weapon in aid of racketeering as set forth in Counts 4 of this Superseding Indictment, which are incorporated here.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT 6
### (Armed Career Criminal in Possession of Firearm)

31.   On or about March 4, 2010, in the State and District of Minnesota, the defendant,

**WILLIAM EARL MORRIS,**
a/k/a Odie,

having previously been convicted of three or more crimes punishable by imprisonment for a term exceeding one year, to-wit:

| CHARGE | LOCATION | CONVICTION DATE |
|---|---|---|
| Terroristic Threats | Ramsey County, MN | July 22, 2005 |
| Burglary in the Third Degree | Beltrami County, MN | January 16, 2007 |
| Burglary in the Third Degree | Beltrami County, MN | January 16, 2007 |
| Assault in the Second Degree | Beltrami County, MN | November 26, 2007 |

thereafter did knowingly and intentionally possess, in and affecting interstate commerce, the following firearm, to wit: a Springfield Armory Model XD .40 pistol, serial number US6387, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1).

### COUNT 27
### (Assault With A Dangerous Weapon in Aid of Racketeering)

64.  Paragraphs 1 through 19, 25 and 26 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

65.  On or about September 23, 2010, in the District of Minnesota and elsewhere, the defendant,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a Tinez,**

together with others known and unknown to the Grand Jury, for the purpose of maintaining and increasing their positions in the Native Mob gang, an enterprise engaged in racketeering activity, unlawfully and knowingly committed, aided and abetted the commission of an assault with a dangerous weapon against Victim-17 in violation of Minnesota Statute, § 609.222, Subd. 1, and 609.17.

U.S.C. § 1959(a)(3)
18 U.S.C. § 2

### COUNT 28
### (Use and Carrying of Firearm During and in
### Relation to a Crime of Violence)

66.   On or about September 23, 2010, in the District of Minnesota and elsewhere, the defendant,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a Tinez,**

together with others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, as set forth in Count 1 of this Superseding Indictment, and assault with a dangerous weapon in aid of racketeering as set forth in Count 27, which are incorporated here.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

### COUNT 38
### (Conspiracy to Distribute and Possess With Intent
### to Distribute Controlled Substances)

83.   From in or about 2007 and continuing up through and including the present, in the State and District of Minnesota and elsewhere, the defendants,

**WAKINYON WAKAN MCARTHUR,**
**a/k/a Kon,**
**a/k/a Killa,**

39

United States v. Wakinyon Wakan Mcarthur, et al.    Criminal No. 12-26(JRT/JSM)

SHAWN MICHAEL MARTINEZ,
a/k/a Tinez,
CHRISTOPHER LEE WUORI,
a/k/a White,
a/k/a Lil White, and
ANTHONY FRANCIS CREE,
a/k/a Pun,

knowingly and intentionally conspired with each other, and with other persons, whose names are known and unknown to the grand jury, to distribute and possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a controlled substance, and 280 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), a controlled substance, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a controlled substance, and 10 grams or more of a mixture or substance containing a detectable amount of heroin, a controlled substance, and oxycodone, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C) and 846.

COUNT 41
(Distribution of a Controlled Substance)

86.   On or about May 16, 2011, in the State and District of Minnesota, the defendants,

WAKINYON WAKAN MCARTHUR,
a/k/a Kon,
a/k/a Killa, and

40

### CHRISTOPHER LEE WUORI,
### a/k/a White,
### a/k/a Lil White,

aided and abetted by each other and persons both known and unknown to the grand jury, did unlawfully, knowingly and intentionally possess with intent to distribute 3 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

### COUNT 42
### (Distribution of a Controlled Substance)

87.    On or about June 14, 2011, in the State and District of Minnesota, the defendant,

### CHRISTOPHER LEE WUORI,
### a/k/a White,
### a/k/a Lil White,

did unlawfully, knowingly and intentionally distribute 5 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

41

## COUNT 43
### (Assault With A Dangerous Weapon in Aid of Racketeering)

88.   Paragraphs 1 through 19, 25 and 26 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

89.   On or about June 25, 2011, in the District of Minnesota and elsewhere, the defendant,

### IRAH LEE GOODWIN,

for the purpose of maintaining and increasing his position in the Native Mob gang, an enterprise engaged in racketeering activity, unlawfully and knowingly committed, and aided and abetted the commission of an assault with a dangerous weapon against Victim-22 and Victim-23, in violation of Minnesota Statute §§ 609.222, Subd. 1, and 609.17.

18 U.S.C. § 1959(a)(3)
18 U.S.C. § 2

## COUNT 44
### (Use and Carrying of Firearm During and in
### Relation to a Crime of Violence)

90.   On or about June 25, 2011, in the District of Minnesota and elsewhere, the defendant,

### IRAH LEE GOODWIN,

together with others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and

42

possess a firearm in furtherance of, a crime of violence for which he may be prosecuted in a court of the United States, to wit, assault with a dangerous weapon in aid of racketeering activity as set forth in Count 43 of this Superseding Indictment, and conspiracy to participate in a racketeering enterprise, as set forth in Count 1 of this Superseding Indictment, which are incorporated here.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT 45
### (Tampering With a Witness)

91.   On or about July 2, 2011, in the District of Minnesota and elsewhere, the defendant,

### SHAUN MICHAEL MARTINEZ,
### a/k/a Tinez,

while aided and abetted by persons both known and unknown to the grand jury, knowingly attempted to intimidate, threaten, and corruptly persuade Victim-24 with the intent to influence, delay, and prevent the testimony of another in an official proceeding, the investigation of the Native Mob, in violation of Title 18, United States Code, Sections 1512(b)(1) and 2.

43

### COUNT 48
### (Possession With Intent to Distribute
### a Controlled Substance)

92.  On or about April 19, 2005, in the State and District of Minnesota, the defendant,

### JESUS THOMAS ALI,
### a/k/a Zues,

did unlawfully, knowingly and intentionally possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base ("crack"), a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT 49
### (Use and Carrying of Firearm During and in
### Relation to a Crime of Violence)

93.  On or about November 30, 2007, in the District of Minnesota and elsewhere, the defendant,

### WAKINYAN WAKAN MCARTHUR,
### a/k/a Kon,
### a/k/a Killa,

together with others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, as set

United States v. Wakinyon Wakan Mcarthur, et al.    Criminal No. 12-26(JRT/JSM)

forth in Count 1 of this Superseding Indictment, which is incorporated here.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

COUNT 50
(Use and Carrying of Firearm During and in<br>Relation to a Crime of Violence)

94. On or about August 24, 2010, in the District of Minnesota, the defendants,

WAKINYAN WAKAN MCARTHUR,<br>a/k/a Kon,<br>a/k/a Killa, and<br>CHRISTOPHER LEE WUORI,<br>a/k/a White,<br>a/k/a Lil White,

together with others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, as set forth in Count 1 of this Superseding Indictment, which is incorporated here.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

45

### COUNT 51
**(Murder Resulting From the Use and Carrying of Firearm
During and in Relation to a Crime of Violence)**

The Grand Jury for the District of Minnesota further charges that:

95.   Paragraphs 1 through 19 of Count One of this Superseding Indictment are incorporated here.

96.   On or about February 26, 2011, in the District of Minnesota, the defendant,

**SHAUN MICHAEL MARTINEZ,
a/k/a "Tinez,"**

together with others known and unknown to the Grand Jury, used and carried a firearm during and in relation to the violation of 18 U.S.C. Section 1962(d) as set forth in Count 1 of this Superseding Indictment, which is a crime of violence for which a person may be prosecuted in a court of the United States, and in doing so, caused the death of a person through the use of a firearm, which killing is a murder as defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, to wit, Jeremee Kraskey, willfully, deliberately, maliciously and with premeditation.

18 U.S.C. § 924(j)
18 U.S.C. § 2

### COUNT 52
#### (Murder in Aid of Racketeering)

97.   Paragraphs 1 through 19, 25 and 26 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

98.   On or about February 26, 2011, in the District of Minnesota, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Native Mob, and for the purpose of gaining entrance to and maintaining and increasing position in the Native Mob, an enterprise engaged in racketeering activity, the defendant,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a "Tinez,"**

together with others known and unknown, unlawfully, knowingly, and intentionally did with intent and premeditation murder Jeremee Kraskey, in violation of Minnesota Statute § 609.185(a)(1).

All in violation of Title 18, United States Code, Section 1959(a)(1) and Title 18, United States Code, Section 2.

### COUNT 53
#### (Retaliation Against a Witness by Murder)

99.   On or about February 26, 2011, in the District of Minnesota, the defendant,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a "Tinez,"**

47

together with others known and unknown, did kill Jeremee Kraskey,
with the intent to retaliate against Jeremee Kraskey for providing
to a law enforcement officer information relating to the commission
or possible commission of a Federal offense, in violation of Title
18, United States Code, Sections 1513(a)(1)(B) and 2.

## COUNT 54
### (Witness Tampering by Murder)

100. On or about February 26, 2011, in the District of
Minnesota and elsewhere, the defendants,

**SHAUN MICHAEL MARTINEZ,**
**a/k/a "Tinez,"**

together with others known and unknown, did kill another person,
to wit, Jeremee Kraskey, with the intent to prevent the
communication by Jeremee Kraskey to a law enforcement officer of
the United States of information relating to the commission and
possible commission of a Federal offense, in violation of Title 18,
United States Code, Sections 1512(a)(1)(C) and 2.

## COUNT 55
### (Distribution of a Controlled Substance)

101. On or about March 3, 2011, in the State and District
of Minnesota, the defendant,

**SHAUN MICHAEL MARTINEZ,**

48

a/k/a Tinez,

did unlawfully, knowingly and intentionally distribute approximately 30 grams of a mixture and substance containing a detectable amount of cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

### COUNT 56
#### (Use and Carrying of Firearm During and in Relation to a Crime of Violence)

102. On or about March 28, 2011, in the District of Minnesota and elsewhere, the defendants,

> **WAKINYAN WAKAN MCARTHUR,**
> **a/k/a Kon,**
> **a/k/a Killa, and**
> **CHRISTOPHER LEE WUORI,**
> **a/k/a White,**
> **a/k/a Lil White,**

together with others known and unknown to the Grand Jury, did knowingly use and carry a firearm during and in relation to, and possess a firearm in furtherance of, a crime of violence for which they may be prosecuted in a court of the United States, to wit, conspiracy to participate in a racketeering enterprise, as set forth in Count 1 of this Superseding Indictment, which is incorporated here.

49

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

### COUNT 57
### (Possession With Intent to Distribute
### a Controlled Substance)

103. On or about April 11, 2012, in the State and District of Minnesota, the defendant,

### JESUS THOMAS ALI,
### a/k/a Zues,

did unlawfully, knowingly and intentionally possess with intent to distribute 5 grams or more of methamphetamine (actual), a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

### FORFEITURE ALLEGATIONS AS TO THE RACKETEERING VIOLATION

Count 1 of this Superseding Indictment is hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963; Title 21, United States Code, Section 853(a); and Title 28, United States Code, Section 2461(c).

Upon conviction of Count 1 of this Superseding Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 1963:

    a.    any interest acquired or maintained in violation of section 1962;

    b.    any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

    c.    any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 1962.

If any of the property described above, as a result of any act or omission of a defendant --

    (1)    cannot be located upon the exercise of due diligence;

    (2)    has been transferred or sold to, or deposited with, a third party;

    (3)    has been placed beyond the jurisdiction of the court;

    (4)    has been substantially diminished in value;  or

    (5)    has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs a, b, and c above, pursuant to Title 18, United States Code, Section 1963(m).

## FORFEITURE ALLEGATIONS AS TO FIREARMS VIOLATIONS

Counts 2-6, 27, 28, 43, 44, 49-54 and 56 are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(a); and Title 28, United States Code, Section 2461(c).

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

Upon conviction of any of 2-6, 27, 28, 43, 44, 49-54 and 56 of this Superseding Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d)(1), any firearm with accessories or any ammunition involved in or used in the violations alleged in 2-6, 27, 28, 43, 44, 49-54 and 56 of this Superseding Indictment.

If any of the property described above, as a result of any act or omission of a defendant --

(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third party;
(3) has been placed beyond the jurisdiction of the court;
(4) has been substantially diminished in value;  or
(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs a, b, and c above, pursuant to title 21, United States Code, Section 853(p).

### FORFEITURE ALLEGATIONS AS TO NARCOTICS VIOLATIONS

Counts 38, 41, 42, 48, 55 and 57 are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(a); and Title 28, United States Code, Section 2461(c).

<u>United States v. Wakinyon Wakan Mcarthur, et al.</u>   <u>Criminal No. 12-26(JRT/JSM)</u>

Upon conviction of any of Counts 38, 41, 42, 48, 55 and 57 of this Superseding Indictment, the defendants shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), any and all property constituting, or derived from, any proceeds the defendants obtained directly or indirectly as a result of said violations, and any and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of said violations.

If any of the property described above, as a result of any act or omission of a defendant --

    (1)    cannot be located upon the exercise of due diligence;
    (2)    has been transferred or sold to, or deposited with, a third party;
    (3)    has been placed beyond the jurisdiction of the court;
    (4)    has been substantially diminished in value;   or
    (5)    has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth above, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                    FOREPERSON

53