UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 12-26(6) (JRT/JSM) |
| Plaintiff, | |
| v. | **ORDER** |
| WILLIAM EARL MORRIS, | |
| Defendant. | |

Andrew R. Winter and Steven L. Schleicher, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Thomas H. Shiah, **LAW OFFICES OF THOMAS H. SHIAH**, 247 Third Avenue South, Minneapolis, MN 55415, for defendant.

The United States filed a superseding indictment against Defendant William Earl Morris and other defendants, alleging that Morris is a member of the Native Mob gang and engaged in a conspiracy to participate in racketeering activity, among other crimes. United States Magistrate Judge Janie S. Mayeron issued a report and recommendation ("R&R") and an order addressing various motions filed by Morris and other defendants. (Docket Nos. 730, 735.)  Morris has filed objections to the R&R's recommendation that his motions to suppress evidence be denied and to the order's denial of his motion for severance.  (*See* Docket Nos. 456, 477, 747.)  The Court will overrule Morris's

objections, deny his motions to suppress evidence, and affirm the order of the Magistrate Judge denying of his motion for severance.[1]

## I.     MOTION TO SUPPRESS EVIDENCE FROM ARREST

### A.     Standard of Review

Morris moves to suppress evidence stemming from his arrest on March 4, 2010. He objects to the Magistrate Judge's recommendation that this motion be denied. Because a motion to suppress is a dispositive matter, the Court must conduct a *de novo* review of this objection. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b); *United States v. Bond*, No. 10-CR-117, 2011 WL 2111743, at *1 (E.D. Wis. May 26, 2011).

### B.     Factual Background

Victoria Connor, a certified officer with the Leech Lake Tribal Police Department, testified that she received a report on March 4, 2010, that a shooting had occurred in Tract 34 on Broken Arrow Lane, a suspect vehicle had fled, and a male suspect was

---

[1] The Court will deny Morris's motion to suppress any statements made by defendant (Docket No. 455) as moot based on the representations of the United States that there were no custodial statements taken from Morris that the United States will use at trial. The Court will deny Morris's motion to suppress identifications of defendant (Docket No. 457) as moot based on the representations of the United States that any lineups or identifications as they related to Morris will not be used against him. The Court will also deny Morris's motion to suppress wire interceptions, electronic surveillance, and wiretapping (Docket No. 459) as moot based on the representations of the United States that there was no Title III activity. These rulings are in accordance with the recommendations of the Magistrate Judge, to which Morris has filed no objection. Finally, as part of his motion to suppress any evidence obtained as a result of any illegal searches, Morris moved to suppress searches of his living quarters while incarcerated at MCF in Rush City, MN. The United States responded that Morris did not have a reasonable expectation of privacy in his living space and that it could not respond with more particularity because Morris failed to offer details on the search and seizure he wished to suppress. (United States Response at 25, May 7, 2012, Docket No. 620.) Morris subsequently submitted a letter to the Magistrate Judge stating that he would not pursue a challenge to the search of his jail cell. (Docket No. 631.) The Court will thus order that this motion was withdrawn.

running on foot.  (Tr. of Mots. Hr'g ("Tr.") 184-86, May 21, 2012, Docket No. 640.)  The suspect on foot was reported to be a Native American male wearing a gray hooded sweatshirt and fleeing southbound from Tract 34 toward the wooded area on Tract 33.  (Tr. 188-89, 203.)  The suspect vehicle was reportedly a tan or brown-colored Buick, which Connor associated with co-defendant Anthony Cree.  (Tr. 189, 215-16.)

When Connor reached the stop sign at 164th Street and County Road 60, she observed Anthony Cree's vehicle.  (Tr. 189.)  Connor radioed that she had met the vehicle, and Deputy Eric Lueth ordered her to proceed to Track 33.  (*Id.*)  When Connor arrived at Track 33, Deputy Lueth instructed her to set up a perimeter between the shooting scene and the wooded area separating it from Track 33 and to wait for a suspect to exit that wooded area.  (Tr. 189-90.)  The weather that day was mild and clear with melting snow.  (Tr. 193.)  Connor testified that while traveling on 162nd Street, between Tract 33 and the forested area, she saw a male suspect in a red jersey running from the woods down a hill through a clearing.  (Tr. 190-92.)  At the hearing, Connor identified this suspect as Morris.  (Tr. 196.)

According to Connor, approximately six minutes passed between the time she heard the call about the shooting and when she saw Morris fleeing from the woods.  (Tr. 190.)  Furthermore, the distance between the shooting and where she apprehended Morris was approximately one city block and was all wooded terrain.  (Tr. 190-91.)  Connor stated it was unusual to see someone jogging through this heavily-wooded area in the snow, although she also testified that there formerly existed an ATV trail in the woods and that it was possible that individuals might still use those trails.  (Tr. 193-94,

206.)  When she observed Morris, she believed that he had taken off the gray hooded sweatshirt because it is not uncommon for suspects to shed their clothing while trying to avoid detection.  (Tr. 194.)  Connor could see that Morris did not have a weapon in his hands.  (Tr. 192.)

Connor exited her vehicle, pulled out her taser, and commanded Morris to stop, drop his phone, get on the ground, and put his hands on his head.  (Tr. 192-93.)  Morris did not attempt to run or escape.  (Tr. 207.)  Before detaining Morris, Connor noticed that his pants and shoes were full of snow, he was breathing so heavily that he could not speak or stand, his face was red, and his body was shaking.  (Tr. 195.)  Based on what she observed, Connor believed that Morris had been involved in the shooting.  (Tr. 194, 219-20.)  Connor thus detained Morris in handcuffs in the rear of her police truck for approximately one hour.  (Tr. 195, 197, 208.)

Connor did not ask Morris his name, where he was coming from, where he was going, or if he was connected with the shooting.  (Tr. 208-11.)  About two to three minutes after Connor detained Morris in her truck, he started having a panic attack and vomiting.  (Tr. 195.)

Approximately an hour after Morris's detention began, another police officer tracked footprints in the snow from Tract 34 to where Morris had been apprehended. (Tr. 196-97, 209.)  During this hour, Connor had received no additional information about the suspect.  (Tr. 210.)  In addition, during this hour timeframe, Connor took Morris to the hospital, to the scene of the crime, and to the police substation.  (Tr. 209-10.)

### C. Analysis

Probable cause must exist to justify a warrantless arrest. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth . . . Amendment[ ]." *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). The existence of probable cause is assessed at the time of arrest. *Adams*, 346 F.3d at 1169. Probable cause exists if "the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *Id.*; *see also Anderson v. Cass Cnty., Mo.*, 367 F.3d 741, 745 (8th Cir. 2004).

Morris objects to the Magistrate Judge's conclusion that there was probable cause for his arrest by Connor on March 4, 2010, and, accordingly, he argues that the Court should suppress all evidence seized as a result of this arrest. The Court will overrule this objection because Connor had probable cause to believe that Morris had involvement with the reported shooting.

Connor received information from other law enforcement officers that a Native American male had been involved in the shooting and was fleeing southbound from Tract 34 toward the wooded area on Tract 33, and it was for this reason that she set up a perimeter between the shooting scene and the wooded area separating it from Tract 33. Under these circumstances, a person of reasonable caution would have believed that Morris was involved with the shooting when he ran from this heavily wooded and snowy area – which Connor believed was an unusual activity – approximately six minutes after

- 5 -

the shooting, near the location of the shooting, while covered in snow and breathing heavily with a red face. *See, e.g.*, *McDonald v. Arkansas*, 501 F.2d 385, 386-87 (8th Cir. 1974) (finding probable cause to arrest when police, responding to a reported rape, found an individual who matched the suspect's description running through the neighborhood where the rape occurred). The fact that Morris was wearing a different outfit than that described on the suspect weighs against a finding of probable cause. But because Connor reasonably believed that Morris had discarded the gray sweatshirt, the totality of the circumstances nonetheless establish probable cause.[2] *See, e.g.*, *United States v. Martin*, 28 F.3d 742, 745 (8th Cir. 1994) (finding probable cause despite discrepancy between defendant's appearance and a description of the suspect because police possessed additional facts linking the defendant to the crime). Accordingly, the Court will not suppress evidence stemming from Morris's arrest on March 4, 2010.

## II.   MOTION TO SUPPRESS EVIDENCE FROM WARRANTS

### A.   Standard of Review

Morris next moves to suppress evidence stemming from search warrants for his home and for the testing of his saliva. He objects to the Magistrate Judge's recommendation that the Court deny this motion. As above, because a motion to suppress is a dispositive matter, the Court must conduct a *de novo* review of this objection. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b); *Bond*, 2011 WL 2111743, at *1.

---

[2] Morris did not object with specificity to the Magistrate Judge's conclusions regarding whether reasonable suspicion existed to justify an investigative detention. The Court need not address this issue, in any event, because the Court has found that probable cause existed.

### B.     Factual Background

Investigator Daniel Gardner with the Cass County Sherriff's Department applied for a search warrant on March 5, 2010, to search a residence located at XXXX 162nd Street in Cass Lake, Minnesota, and for a search warrant for the taking of a saliva sample from Morris for DNA purposes. (*See* United States Exs. 9, 10.) A Cass County district judge signed the warrants, and they were executed on March 5, 2010.

The affidavits, nearly identical for both search warrants, both stated that Gardner had been called in to investigate a March 4, 2010, shooting. Apparent blood and .40 caliber semi-automatic rounds had been found at the scene. The affidavits stated that Gardner had interviewed a witness named John Wind, who had observed the shooting on March 4, 2010, before seeing a suspect in a dark gray hooded sweatshirt and blue jeans run east on Broken Arrow Lane (Tract 34) and run south down the driveway of XXXX Broken Arrow Lane into a wooded section north of Tract 33. The affidavits further described Connor's detention of Morris after finding him running south between Tract 33 and Tract 34, including the fact that Morris vomited after the detention. The affidavits stated, "It should also be noted that the suspect's residence, XXXX 162nd St., was directly on the opposite side of Officer [Connor's] squad car." The affidavits went on to state that a K-9 officer and his K-9 discovered a dark gray hooded sweatshirt and a pair of latex gloves while following a single set of shoe impressions in the snow from the site of Morris's detention to the scene of the shooting. According to the affidavits, the tread pattern of Morris's shoes matched these impressions in the snow.

The affidavit for the search of the house further stated that Morris had previously been visited at his house, XXXX 162nd St NW.  This affidavit requested a search of Morris's house, where "individuals often keep items similar" to those sought in the warrant.  The affidavit for DNA evidence stated that it was "requesting to obtain a saliva sample from Mr. Morris for DNA purposes so it can be compared to possible DNA evidence that may be found on the latex gloves and dark gray hooded sweatshirt."

The search warrant for the residence authorized the search for latex gloves, firearms, and documents showing the ownership or possession of property or showing gang affiliation.  A saline sample was obtained from Morris pursuant to the DNA warrant, and latex gloves were discovered during the search of the residence.

### C.     Analysis

In his objections, Morris maintains that the face of the warrant applications and accompanying affidavits for the search of his residence and gathering of saliva for DNA analysis did not demonstrate that there was a "fair probability" that evidence of the shooting would be found at his Cass Lake residence or that his DNA would furnish evidence of a crime.  A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).  Probable cause exists if a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched.  *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  "Whether probable cause . . . has been established is determined by considering the totality of the

circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'" *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 236).

The Court concludes that a reasonable person could have concluded that there was a "fair probability" that evidence of the shooting would be found at the Cass Lake residence and that Morris's DNA would furnish evidence of a crime. The affidavits explained how Morris was detained running out of woods in a spot near where the shooter was anticipated to be and that he vomited after his detention. Furthermore, a K-9 tracked from the point of Morris's detention back to the location of the shooting, and there was a set of shoe impressions matching Morris's shoes, along with latex gloves and a dark gray hooded sweatshirt, along this trail. The totality of these facts, together with evidence that Morris lived at XXXX 162nd Street, created a fair probability that Morris was the shooter. There was thus a fair probability that Morris's DNA would match evidence found on the latex gloves and gray sweatshirt discovered along the trail of his footprints near the scene of the crime. There was also a fair probability that evidence of the shooting would be discovered at Morris's residence. Accordingly, the Court will overrule Morris's objections and decline to suppress evidence obtained from the search warrants.

Morris argues that there was insufficient evidence of a nexus between Morris's home and the evidence expected to be found. The Eighth Circuit has noted:

> Although there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue, we have held that an officer executing a search warrant may rely in the permissibility of

- 9 -

> the issuing judge's inference that such a nexus exists when that inference has **common sense appeal.**

*United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (citations and internal quotation marks omitted) (emphasis added). The Court concludes that, here, there was common sense appeal to the inference that evidence related to the shooting would be found in Morris's home. Connor detained Morris between the shooting site and his home, "directly on the opposite side" of his home, making it reasonable to assume his home was where he came from on his way to the shooting and where he was going. Under these circumstances, it was reasonable to infer that evidence related to the crime existed in Morris's home. *See United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (finding it reasonable to infer that the defendant would have a video and photographs at his new residence where "it could be presumed that [the defendant] would maintain in his possession the video and photographs"). Specifically, the warrant sought latex gloves, firearms/ammunition, and evidence of gang affiliation, which were items that could be reasonably expected to be found in his home and not left at the scene of the crime. Accordingly, the Court will deny Morris's motion to suppress evidence stemming from the warrants.

### III.   MOTION FOR SEVERANCE

#### A.   Standard of Review

Finally, Morris moves to sever his case from the other defendants. Morris objects to the Magistrate Judge's order denying this motion. A district court's review of a magistrate judge's order on a nondispositive matter is "extremely deferential." *Roble v.*

*Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980).  A motion to sever is a nondispositive motion.  *United States v. Ortiz*, No. 08-CR-231, 2011 WL 1344213, at *1 (E.D. Wis. Apr. 8, 2011) (holding that a "motion to sever is a nondispositive pretrial motion").[3]  The Court will reverse such an order only if it is clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a).

### B.   Analysis

In his objections, Morris argues that a joint trial would prejudice him to the jury, deprive him of a fair and impartial trial, and deny him his due process rights in violation of the Constitution of the United States.  Under Federal Rule of Criminal Procedure 8(b), defendants are properly joined "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  "Generally, the 'same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme."  *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998).  "[I]t is a well settled rule in [the Eighth C]ircuit that the propriety of joinder must appear on the face of the indictment."  *United States v. Bledsoe*, 674 F.2d 647, 655 (8th Cir. 1982).  "Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense."  *Id.* at 656.  Courts must liberally construe Rule 8(b).  *Id.* at 655.

---

[3] The Court's conclusion on the motion to sever would be the same even if it had reviewed this motion *de novo*.

The Court finds that the requirements of Rule 8(b) are met in this case. Morris is charged, along with his co-defendants, with knowing participation in an unlawful RICO conspiracy. In Count 2, the defendants are charged with a conspiracy to use and carry firearms during and in relation to a crime of violence. The remaining counts involve acts that were allegedly committed in the furtherance of or in conjunction with the RICO conspiracy. Because the superseding indictment alleges that the acts taken by all defendants were acts in furtherance of a RICO conspiracy, the Court concludes that all of the accused criminal conduct stems from "the same series of acts or transactions, constituting an offense" under Rule 8(b).[4]

Federal Rule of Criminal Procedure 14 also applies to motions for severance. This Rule permits the Court, in its discretion, to sever otherwise properly joined defendants or offenses where a joint trial may result in real prejudice to one of the defendants. Fed. R. Crim. P. 14(a); *Wadena*, 152 F.3d at 848. To grant a motion for severance, "the necessary prejudice must be severe or compelling," *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) (internal quotation marks omitted), and alternative, less drastic measures addressing the potential for prejudice are preferred, *Zafiro v. United States*, 506 U.S. 534, 537-39 (1993); *see also United States v. Flores*, 362 F.3d 1030, 1039 (8th Cir.

---

[4] *See United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002) ("Persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense."); *United States v. Houston*, 892 F.2d 696, 703 (8th Cir. 1989) ("[T]he initial joinder of the defendants was proper pursuant to [Rule] 8(b) because the indictment charged all of the defendants with participation in a single conspiracy and charged several of the defendants with various substantive counts arising from the same conspiracy." (footnote omitted)); *United States v. Irizarry*, 341 F.3d 273, 289 (3d Cir. 2003); *see also United States v. Darden*, 70 F.3d 1507, 1527 (8th Cir. 1995) ("Each defendant may be held accountable for actions taken by other defendants in furtherance of the [RICO] conspiracy[.]").

2004). Prejudice is severe where the jury is incapable of compartmentalizing the evidence or the defendants' defenses are irreconcilable. *United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004); *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996). In determining the jury's ability to compartmentalize the evidence, courts consider the complexity of the case and the adequacy of admonitions and instructions of the trial judge. *Pherigo*, 327 F.3d at 693. There is a presumption that, "[p]ersons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense." *United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002). Furthermore, "a court must weigh the inconvenience and expense of separate trials against the prejudice resulting from a joint trial of codefendants." *Pherigo*, 327 F.3d at 693.

Morris has not identified specific evidence that the United States may introduce that will prejudice his trial. Instead, he has made only general allegations of potential prejudice. Such conclusory allegations are insufficient to support a motion for severance. *See United States v. Garrett*, 961 F.2d 743, 746 (8th Cir. 1992) (holding that a defendant "must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence"). Instead of finding that Morris will be unduly prejudiced, the Court concludes that "justice is best served by trying the members of [this] racketeering enterprise together because a joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct

outcome." *See United States v. Darden*, 70 F.3d 1507, 1527-28 (8th Cir. 1995) (internal quotation marks omitted).

Morris also makes an allegation that the evidence introduced may involve statements or admissions by his co-defendants made outside of his presence which are inadmissible against him. In addition, Morris makes a general allegation that his rights under *Bruton v. United States*, 391 U.S. 123 (1968)[5] will be violated if his motion for severance is not granted. However, Morris has not identified any statements that would violate *Bruton* or otherwise be inadmissible against him. Accordingly, the Court finds these arguments to be insufficient grounds on which to grant the motion for severance. Of course, Morris may object at trial to evidence that he deems unduly prejudicial or otherwise inadmissible.

Finally, the Court has weighed the inconvenience of having separate trials. This case involves a long history of many acts allegedly committed by members of the Native Mob. Having a joint trial under these circumstances "save[s] time and money for the courts, prosecutors, and witnesses." *See Darden*, 70 F.3d at 1527. This factor thus weighs in favor of denying the motion for severance. Considering the factors discussed above and the evidence presented, the Court will overrule Morris's objections to the denial of his motion for severance.

---

[5] In *Bruton*, the Supreme Court held that the admission of statements from a nontestifying defendant that inculpated a co-defendant violated the latter's Confrontation Clause rights, despite a curative instruction otherwise. 391 U.S. at 135-36.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's objections [Docket No. 747] are **OVERRULED**.

2. The Magistrate Judge's Order [Docket No. 730] is **AFFIRMED**.

3. The Report and Recommendation of the Magistrate Judge [Docket No. 735] is **ADOPTED**.

4. Defendant's Motion to Suppress Any Statements Made by Defendant [Docket No. 455] is **DENIED**.

5. Defendant's Motion to Suppress Evidence Obtained as a Result of Any Illegal Searches [Docket No. 456] is **DENIED**, except that Morris's motion to suppress searches of his living quarters while incarcerated at MCF in Rush City, Minnesota is **WITHDRAWN**.

6. Defendant's Motion to Suppress Identifications of Defendant [Docket No. 457] is **DENIED**.

7. Defendant's Motion to Suppress Wire Interceptions, Electronic Surveillance, and Wiretapping [Docket No. 459] is **DENIED**.

DATED: December 12, 2012　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge